UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA

   - against -

ABDUL RAHMAN ABDULLAH ASHUBI,
                       Defendant.

------------------------------------------X



07 Cr. 1008-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On April 15, 2008, Abdul Rahman Abdullah Ashubi ("Ashubi" or "Defendant") appeared before the Honorable Debra C. Freeman and pleaded guilty to one count of conspiracy to commit food stamp fraud, in violation of 18 U.S.C. § 371, one count of food stamp fraud, in violation of 7 U.S.C. §§ 2016 and 2024(b)(1), and one count of theft/embezzlement of public money, in violation of 18 U.S.C. § 641. For the reasons set forth below, Ashubi will be sentenced to 41 months' imprisonment and 3 years' supervised release on each count, with all terms to run concurrently. Ashubi also will be required to make restitution and pay a special assessment of $300.

**Prior Proceedings**

1

On August 3, 2007, a complaint was filed in the Southern District of New York against Ashubi, Zaid Abdul Homran ("Homran"), and Fouad Ali Saleh Mosleh ("Mosleh"), charging them with food stamp fraud, in violation of 7 U.S.C. § 2024. On August 6, 2007, Ashubi was arrested pursuant to a warrant issued August 3, 2007. On October 31, 2007, Indictment 07 Cr 1008 was filed against Ashubi. Count I charged that from January 2006 through July 2007, in the Southern District of New York and elsewhere, Ashubi and others conspired to transfer, acquire, and alter authorization cards and access devices with a value of more than $5,000 in a manner contrary to 7 U.S.C. § 2024(b)(1), in violation of 18 U.S.C. § 371. Count II charged that from January 2006 through July 2007, in the Southern District of New York and elsewhere, Ashubi exchanged customers' food stamp benefits for cash at his Bashar Deli in exchange for a share of the cash proceeds, in violation of 7 U.S.C. §§ 2016 and 2024(b)(1) and 7 C.F.R. § 278.2. Count III charged that from January 2006 through July 2007, in the Southern District of New York and elsewhere, without having authority, Ashubi converted for his own personal use property of the United States Department of Agriculture (the "USDA"), in violation of 18 U.S.C. §§ 641 and 642.

On April 15, 2008, Ashubi pleaded guilty to his criminal conduct as charged. Sentencing is scheduled for October

6, 2008.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. As the Supreme Court explained in Gall v. United States, 128 S.Ct. 586 (2007):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

Id. at 596 (internal citation and footnote omitted). Thus, in addition to analysis of the Guidelines, the sentence imposed here results from consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

3

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 128 S. Ct 558, 571 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Ashubi's personal and family history.

**The Offense Conduct**

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

The Food and Nutrition Service (the "FNS") is a program administered by the USDA in which pre-approved food retailers may sell food items in exchange for food stamps presented by eligible members of certain low-income households. These stamps may only

5

be used to purchase certain items. An authorized food retailer may not exchange them for money unless money is being returned as change in a transaction in which food stamps were accepted as payment.

In order to participate in the USDA food stamp program, retailers must apply for a license to redeem food stamps. A retailer's applications must detail hours of business, owners, estimated gross annual food sales, and other pertinent information. Prior to becoming an authorized retailer, the store owner or representative must attend an orientation class. The purpose of this class is to teach the rules and regulations of the food stamp program.

USDA food stamps are distributed to recipients in the New York metropolitan area through the use of Electronic Benefit Transfer ("EBT") cards. On the back of each card is a magnetic strip containing coded information identifying the particular recipient and the dollar amount of the benefit to which they are entitled. At the beginning of each month, food stamp benefits are encoded onto the recipient's EBT card magnetic strip.

For each EBT card transaction, the retailer's computer terminal prints a receipt stating, "DO NOT DISPENSE CASH." In

6

addition, at the initial training session that the retailer must attend, the FNS instructs the retailer that no cash may be dispensed during a food stamp EBT transaction, except change under a dollar.

On May 10, 2005, Ashubi applied for a license to accept and redeem food stamp benefits through a retailer named "Raed Deli," located at 1126 Westchester Avenue, Bronx, New York. In the application, Ashubi named himself as the owner of the business. Based on Ashubi's application, the store received a classification of "small grocery."

On May 31, 2005, Ashubi received the mandatory food stamp program orientation. Upon his completion of this class, Ashubi's store, which had been renamed "Bashar Deli," received the necessary authorization to participate in the food stamp program. Pursuant to food stamp rules, Ashubi provided bank account information for a Bank of America account that would be dedicated to any redemptions of food stamp benefits at the store.

In December 2006, an undercover NYPD detective (the "UC") began regularly visiting Bashar Deli. The UC observed several individuals working in this store, who were later identified as Ashubi, Homran and Mosleh. According to the UC,

7

Bashar Deli only has one cash register in the store.

On several occasions between April 26, 2007 and July 13, 2007, a confidential informant (the "CI") and a cooperating witness (the "CW") visited Bashar Deli. During their visits, Ashubi, Homran and Mosleh debited food stamp benefits from the EBT cards offered by the CI and the CW.

On April 26, 2007, Homran fraudulently debited food stamp benefits from an EBT card offered by the CI. On this occasion, the CI attempted to purchase $3.89 worth of food. However, Homran billed the USDA $103.88 in food stamp redemptions and gave the CI $65.80.

On May 1, 2007, Ashubi fraudulently debited food stamp benefits from an EBT card offered by the CI. On this occasion, the CI attempted to purchase $2.00 worth of food. However, Ashubi billed the USDA $81.00 in food stamp redemptions. In return, the CI was given $54.00 in cash by Ashubi.

On May 17, 2007, Mosleh fraudulently debited food stamp benefits from an EBT card offered by the CI. On this occasion, the CI attempted to purchase $1 worth of food. However, Mosleh billed the USDA $100.99 in food stamp redemptions and gave the CI

8

$71.00.

Several weeks later, Mosleh again fraudulently debited food stamp benefits from an EBT card. On this occasion, the CW attempted to purchase $5.99 worth of food and Mosleh billed the USDA $54.99 in food stamp redemptions. The CW subsequently received $70.00 from Mosleh.

On June 12, 2007, Homran fraudulently debited food stamp benefits from an EBT card offered by the CW. On this occasion, the CW attempted to purchase $12.00 worth of food. However, Homran billed the USDA $39.29 in food stamp redemptions. In return, the CW was given $20 in cash by Homran.

A comparison of records maintained during the year 2006 by the Bashar Deli and another store in the vicinity suggested that the employees of the Bashar Deli were conducting illegal food stamp transactions. This other store claimed a significantly lower amount of redeemed benefits, although it has the same "small grocery store" classification as Bashar Deli. Bashar Deli redeemed approximately $306,433.89 in food stamp benefits in the same period of time that the comparison store redeemed $92,299.

From January 1, 2007, through July 2007, Bashar Deli redeemed approximately $284.804 in food stamp benefits, whereas the comparison store redeemed $48,781.48 in food stamp benefits. Thus, Bashar Deli's food stamp redemptions were over 580 percent higher than those of the comparison store.

In Bashar Deli's application to participate in the food stamp program, Ashubi estimated that his store obtained $157,500 in annual retail sales. In comparison, Bashar Deli redeemed $306,433.89 in food stamp benefits during the 2006 calendar year. In 2007, during a seven-month period, Bashar Deli redeemed $284,882.76 in food stamp benefits.

On August 6, 2007, Ashubi was taken into custody.

During the life of this offense, Ashubi, Homran and Mosleh received approximately between $400,000 and $1 million in fraudulently redeemed funds.

The Government asserts that Ashubi received at least $591,316.65 in fraudulently redeemed food stamp benefits from the USDA during the life of the offense. This amount is disputed. However, the sentence set forth herein assumes that figure to be correct. The sentence is therefore subject to modification

10

depending on the proof submitted at the sentencing hearing.

**The Relevant Statutory Provisions**

The maximum statutory sentence for violation of 18 U.S.C. § 371 is five years imprisonment. Count I therefore constitutes a Class D felony, pursuant to 18 U.S.C. § 3559(a)(4). There is no applicable statutory minimum sentence.

The maximum statutory sentence for violation of 7 U.S.C. § 2024(b)(1) is twenty years. Count I therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3).

The maximum statutory sentence for violation of 18 U.S.C. § 641 is ten years. Count I therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3).

The Court may also impose a term of supervised release of up to three years, pursuant to 18 U.S.C. § 3583(b)(2).

The maximum fine for each Count is the greater of $250,000 or twice the gross loss or gain resulting from the offense, pursuant to 18 U.S.C. § 3571. A special assessment of $300 is mandatory, pursuant to 18 U.S.C. § 3013.

Ashubi is eligible for not less than one and no more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the conditions outlined in 18 U.S.C. § 3563(b) must be imposed as a condition of probation, pursuant to 18 U.S.C. § 3563(a)(2).

**The Guidelines**

The May 1, 2008 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

Counts I, II and III are grouped pursuant to §3D1.2(d) because the offense level is determined largely on the basis of the total amount of harm or loss.

The guideline for a violation of 18 U.S.C. § 371 is found in §2X1.1 which directs that the base offense level from the guideline for the substantive offense plus any applicable adjustments for such guideline be used. The substantive offenses, violations of 18 U.S.C. § 641 and 7 U.S.C. § 2024, are found in section §2B1.1, which yields a base offense level of seven, pursuant to §2B1.1(a)(1).

12

Because the instant offense involved a loss of approximately $591,316.65, 14 levels are added, pursuant to §2B1.1(b)(1)(H).

During the life of the offense, the defendant, along with his co-defendants, made several fraudulent transactions at their store. According to the Government, Ashubi is the owner and operator of this store and directed his employees to make these fraudulent transactions. Pursuant to §3B1.1(a), as the defendant was a leader of an extensive criminal activity that involved five or more participants, the offense level is increased by four levels.

Based on Ashubi's statement and allocution before the Court, and his timely notification of his intention to plead guilty, allowing the Government to allocate its resources more efficiently, and since the offense level is 16 or greater, pursuant to §3E1.1(a) and (b), the offense level is reduced by three.

Accordingly, the applicable offense level is 22.

Ashubi has no known criminal convictions. Therefore,

13

he has zero criminal history points and a Criminal History Category of I. Based on a total offense level of 22 and a Criminal History Category of I, the Guidelines range for imprisonment is 41 to 51 months.

The Guidelines range for a term of supervised release is at least two, but not more than three years, pursuant to §5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, Ashubi is not eligible for probation, pursuant to §5B1.1, application note 2.

The fine range for the instant offense is from $7,500 to $75,000 or twice the gross gain or loss resulting from the offense, pursuant to §5E1.2(c)(3)(A) and (c)(4). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release imposed, pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,076.83 to be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is hereby determined that a sentence within the Guidelines framework is warranted.

**The Sentence**

For the instant offenses, Ashubi will be sentenced to 41 months' imprisonment and a three-year term of supervised release on each count, to run concurrently.

Ashubi is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release. It is recommended that Ashubi be supervised by the district of his residence.

15

As mandatory conditions of his supervised release, Ashubi shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

> (1) Ashubi shall provide the probation officer with access to any requested financial information.

> (2) Ashubi shall obey the immigration laws and comply with the directives of immigration authorities.

The fine in this case is waived. However, it is ordered that Ashubi shall make restitution, payable to the Clerk, U.S. District Court, 500 Pearl Street, New York, NY, 10007, for disbursement to the United States Department of Agriculture in the amount of $591,316.65, except that no further payment shall be required after the sum of the amounts actually paid by all co-conspirators has fully covered the compensable injury. The restitution shall be paid in monthly installments of 15% of gross

monthly income over a period of supervision to commence 30 days after release from custody. The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

A special assessment of $300, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 6, 2008.

It is so ordered.

**New York, NY**
~~September~~ , 2008
_October 1,_

/s/ ROBERT W. SWEET
U.S.D.J.

17